UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                     02 CR 0778 (SJ)

   - against -

                                                                     **MEMORANDUM &**
                                                                     **ORDER**

RICHARD JAMES and RONALD MALLAY,

                     Defendants.
-----------------------------------------------------------X
A P P E A R A N C E S:

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney, EDNY
One Pierrepont Plaza, 15th Floor
Brooklyn, New York 11201
By:    Robert Capers, Esq.
        James McGovern, Esq.
        Lawrence Ferazani, Esq.
Attorneys for the United States

EPHRAIM SAVITT, ESQ.
260 Madison Avenue, Suite 2200
New York, NY 10016
Attorney for Defendant Richard James

STEVE ZISSOU & ASSOCIATES
42-40 Bell Blvd., Suite 302
Bayside, NY 11361
By:    Steve Zissou, Esq.
Attorney for Defendant Richard James

KAPLAN & KATZBERG
767 Third Ave, 26th Floor
New York, NY 10017
By:    Kenneth J. Kaplan, Esq.
Attorney for Defendant Ronald Mallay

LAW OFFICES OF RICHARD JASPER
276 Fifth Avenue, Suite 501
New York, NY 10001
By:     Richard Jasper, Esq.
Attorney for Defendant Ronald Mallay

JOHNSON, Senior District Judge:

Defendants Richard James and Ronald Mallay stand accused of participating in the "Mallay Enterprise," a criminal enterprise that existed for the purpose of, among others things, committing murder for pecuniary gain. Specifically, Defendants are accused of purchasing life insurance policies, hiring people to murder the insured person, and then recouping the life insurance proceeds for themselves and their co-conspirators. In sum, Defendants are charged with murder, murder-for-hire, solicitation of murder, conspiracy to murder, racketeering, obstruction of justice, mail fraud, and money laundering. Although Defendants are collectively charged with four murders, only the murders of Hardeo Sewnanan and Basdeo Somaispersaud are capital counts.

On May 9, 2007, the government called Derrick Hassan ("the witness") as a witness and introduced audio recordings of a conversation between the witness and Defendant Mallay which took place on August 8, 2001. The government introduced excerpts of the conversation, but not the entire conversation. Defendants have moved to introduce additional excerpts ("the proffered excerpts") of the August 8, 2001, conversation. On May 10, 2007, the Court reviewed the portions that Defendants

2

sought to introduce, heard oral argument on the issue, and ruled that the proffered excerpts could not be introduced. On May 13, 2007, Defendants renewed their motion to introduce the proffered excerpts into evidence and to cross examine the witness on the issue of "backtracking," a Guyanese slang term for illegal alien smuggling. For the reasons stated below, the Court adheres to its previous ruling.

**I.      Admissibility of Proffered Excerpts**

Defendants have proffered a myriad of reasons as to why the proffered excerpts are admissible. In turn, each legal theory of admissibility is considered.

**A.      Rule of completeness**

Defendants' first challenge to the Court's ruling as to the admissibility of the proffered excerpts is premised upon the rule of completeness, see Fed. R. Evid. 106; United States v. Mussaleen, 35 F.3d 692, 696 (2d Cir.1994), which is violated "'only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant,'" United States v. Yousef, 327 F.3d 56, 154 (2d Cir.2003) (quoting United States v. Benitez, 920 F.2d 1080, 1086-87 (2d Cir.1990)).

Under this principle, an "omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Castro, 813 F.2d 571, 575-76 (2d Cir.1987), cert. denied, 484 U.S. 844 (1987); see, e.g., Beech Aircraft Corp. v. Rainey, 488 U.S.

153, 172-73 (1988); Phoenix Associates III v. Stone, 60 F.3d 95, 102 (2d Cir.1995). The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages. See United States v. Marin, 669 F.2d 73, 84 (2d Cir.1982).

Defendant Mallay argues that a jury hearing the proffered excerpts would interpret the subject of the conversation to be backtracking rather than murder-for-hire. This Court disagrees. The proffered excerpts do not change the meaning of the excerpts that the government introduced. The conversation about backtracking is not mutually exclusive to the conversation about murder-for-hire, nor do the proffered excerpts exhibit a plan or scheme to engage in alien smuggling. Rather, in the proffered excerpts, Defendant Mallay displays knowledge of the alien smuggling trade as well as interest in current methods of the practice. Nowhere in the proffered excerpts is there evidence of the planning, conspiring, or scheming that would compromise the witness' interpretation of the government's evidence. As a result, the proffered excerpts cast no doubt on the meaning of the admitted portion, do not place the admitted portion in context, and do not avoid misleading the jury.

Further, as discussed below, the witness has testified that he discussed backtracking with Defendant Mallay and has been cross-examined as to whether the portions that the government introduced into evidence were about backtracking rather than murder-for-hire. (Tr. 1985-86). The witness has stated unequivocally that those conversations were not about backtracking. Accordingly, the jury has not been given a

distorted view of Defendant Mallay's statements in the absence of the proffered excerpts. See Mussaleen, 35 F.3d at 696 (finding that rule of completeness was not violated where defendant's statement, in conjunction with testimony, allowed the jury to adequately weigh defendant's defense). Therefore, the Court finds that the proffered excerpts are inadmissible under the rule of completeness.

### B. Hearsay

Defendants have alternatively offered the proffered excerpts as independently admissible, a contention that the government disputes on the grounds that the proffered excerpts constitute inadmissible hearsay. Defendants contend that the proffered excerpts are not hearsay because (a) they are statements against penal interest; (b) they are statements "of which the party has manifested an adoption or belief in its truth," Fed. R. Ev. 801(d)(2)(B); and (c) they are admissible under the residual exception under Rule 807. Each of these contentions is meritless.

First, Defendant Mallay's statements cannot be considered statements against penal interest as to either defendant. Rule 804(b)(3) creates an exception to the hearsay rule for statements against penal interest. A hearsay statement can only be introduced as a statement against interest if (a) the declarant is unavailable, (b) the statement is so contrary to the declarant's interest that it is inherently trustworthy, and (c) if offered to exculpate a criminal defendant, there are corroborating circumstances that clearly indicate the trustworthiness of the statement.

Defendant Mallay cannot introduce these statements simply because he is not

5

unavailable for the purposes of this hearsay exception. United States v. Peterson, 100 F.3d 7, 15 (2d Cir.1996) (finding that defendant did not, "by exercising his Fifth Amendment right not to testify, become unavailable within the meaning of Rule 804.").

Nor can Defendant James introduce the statements because the proffered excerpts do not clearly implicate Defendant Mallay in alien smuggling. In the first proffered excerpt, Mallay and Hassan "were discussing a corrupt customs agent that had worked in New York [...] but had been recently transferred to Atlanta." Def.'s Letter dated May 14, 2007, p. 8 ("Def's Letter"). There is no interpretation of this portion of the conversation that would expose Defendant Mallay to criminal liability. In the second proffered excerpt, Defendant Mallay "discusses the importance of getting forged 'papers' [and] how much it would cost to smuggle someone into the United States from Guyana." Def's Letter, p. 9. Under Defendants' own interpretation of these excerpts, Defendant does not inculpate himself in any crime, but rather only discusses the methods and means to commit the crime. At most, Defendant Mallay's statements indicate that he is familiar with backtracking, but at no point in the proffered excerpts does Defendant Mallay actually implicate himself in any conspiracy to commit that crime. Accordingly, the Defendant Mallay's statements are not properly considered statements against penal interest and are inadmissible when proffered by either defendant.

Defendants' contention that the statements are admissible under Rule 801(d)(2)(B) is likewise without merit. Defendants disregard the requirement under

6

Rule 801(d)(2) that these statements be made by a party-opponent.  See Fed. R. Evid. 801(d)(2).  For this reason alone, the proffered excerpts do not constitute a manifest adoption of another's statement.

Defendants resorts to the residual exception to the hearsay rule, but the Court finds that this basis for introduction of the statements is also incorrect.  See Fed. R. Evid. 807.  A statement will be admitted under Rule 807 if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."  United States v. Bryce, 208 F.3d 346, 350-51 (2d Cir.1999).

Sometimes referred to as the "catch-all" exception to the hearsay rule, Rule 807 "was necessary to permit courts to admit evidence in exceptional circumstances where the evidence was necessary, highly probative, and carried a guarantee of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions."  United States v. Renville, 779 F.2d 430, 439 (8th Cir.1985).  Because Rule 807 is properly viewed as a "safety-valve" to prevent injustice, it is "to be used only rarely, and in exceptional circumstances" and "appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present."  United States v. Bailey, 581 F.2d 341, 347 (3d Cir.1978); see also Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 112 (3d Cir.2001) ("Rule 807 should only be used in rare situations.").  Because of these

7

considerations, a district court has considerable discretion in determining admissibility under Rule 807.  See United States v. Rodriguez, 218 F.3d 1243, 1246 (11th Cir.2000).

The Court sees no reason to admit the proffered excerpts under Rule 807.  First, the Court notes that Rule 807 provides that statements not covered by Rule 803 or 804 "but having equivalent circumstantial guarantees of trustworthiness" are not excluded by the hearsay rule if they meet certain requirements.  United States v. Jackson, 335 F.3d 170, 179 (2d Cir.2003).  Here, because Defendant Mallay's statements lack corroborating circumstances indicating their trustworthiness under Rule 804(b)(3), the statements clearly lack "equivalent circumstantial guarantees of trustworthiness" required under Rule 807.  See id.

In addition, the witness has already acknowledged that he discussed backtracking with Defendant Mallay, and defense counsel has, through cross-examination, advanced the theory that the witness' interpretation of the admitted recordings is incorrect.  The Court sees no manifest injustice in precluding Defendants from introducing evidence of that to which the witness has already testified.  Further, by notifying the government that they intended to introduce the proffered excerpts on the evening before cross-examination, Defendants have not complied with the notice requirement of Rule 807.  Accordingly, the Court declines to exercise its discretion and admit the hearsay statements under Rule 807.

### C.     Rule 806

Defendants James' contention that the statements are admissible under Rule

806 is also faulty. Rule 806 states in relevant part that "[w]hen a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." Fed. R. Evid. 806. Although it is true that the government has introduced Defendant Mallay's statement under Rule 801(d)(2)(E), the purpose of Rule 806 is to allow a party to attack the credibility of the declarant. Defendant James has advanced no theory under which the proffered excerpts attack Defendant Mallay's credibility.

Moreover, as noted above, the witness has already testified that he and Defendant Mallay discussed backtracking at a separate portion of the conversation. Even if the proffered excerpts attacked the credibility of Defendant Mallay, Defendant James would have to demonstrate that the evidence would be admissible if Defendant Mallay was the witness. See Fed. R. Evid. 806 (Hearsay declarant's credibility "may be attacked, and if attacked may be supported, by any evidence *which would be admissible if declarant had testified as a witness*.") (emphasis added). Defendant James has not done so and his attempt to admit the proffered excerpts fails.

## II. Cross-Examination

Defendants also contend that they have been precluded from cross-examining Mr. Hassan about his conversations with Defendant Mallay about backtracking. Defendants make the utterly unremarkable point that "it is a fundamental element of trial practice that the accused is permitted to impeach the credibility of witness."

Def.'s Letter, p. 7. However, Defendants contend that without the proffered excerpts, they will be prevented from cross-examining Derrick Hassan about backtracking. This argument is not supported by the record. Indeed, Defendants have already cross-examined Mr. Hassan about his involvement in backtracking as well as his conversations with Defendant Mallay on the subject:

> Q Now, you indicated that you had suggested or said to Mr. Mallay that that $10,000 what [sic] a result of two people that you had smuggled up from Guyana into the United States, correct?
>
> A Yes, sir.
>
> Q That's also known as backtracking, right?
>
> A Yes, sir.
>
> Q Backtracking is Guyanese slang for illegal alien smuggling?
>
> A Yes, sir.
>
> Q Now, the reason you told Mr. Mallay this was because you had been instructed to do so by the agents; is that so?
>
> A Yes, sir.
>
> Q The agents had told you to say to Mallay that you were smuggling up people from Guyana?
>
> THE COURT: Asked and answered. Asked and answered.
>
> Q And you had previously said to Mr. Mallay that you had smuggled aliens up; is that a fact?

10

>   A   Yes, sir.

(Tr. at 2045-46). Defendants have also advanced the theory, albeit unsuccessfully, that the subject of the excerpts that the government has introduced is backtracking, not murder-for-hire.

>   Q   So, in this excerpt that we have, 301-D, you are saying, well, if anything, I think Guyana, you know. Then Mr. Mallay says, in Guyana you can get something done but not here. That refers to backtracking alien smuggling, doesn't it, sir?
>
>   A   No, sir.
>
>   [...]
>
>   Q   Now, at line 32 of that excerpt, Mr. Mallay is saying: I got get the man because I don't want that man to kill me. Black man are serious man. Do you see that?
>
>   A   Yes, sir.
>
>   Q   That the again refers to backtracking, doesn't it, sir?
>
>   A   No, sir.[1]

(Trans. at 2060; 2063). Further, Defendants have advanced the theory that the

---

[1] Defendants, in a letter dated May 14, 2007, supplemented their motion based on this testimony. This portion of the transcript, Defendants contend, renders the proffered excerpts admissible as a prior inconsistent statement. This argument is a misinterpretation of the record. The witness was clearly referring to the portions in the government's evidence that he was asked about on cross-examination and his testimony there is entirely consistent with his prior testimony.

government has purposefully omitted other relevant portions of the August 8, 2001, conversation and other recorded conversations:

> Q      And down in line 9 of that same page, Mr. Mallay says Guyana too much people, man, but you know the thing is, you got to get reliable people, you know. We don't have the earlier part of that conversation, do we, that immediate conversation, correct?
>
> [...]
>
> A      No, sir.
>
> [...]
>
> Q      This is a transcript of -- is this the entire May 29th conversation?
>
> A      No, sir.
>
> Q      There's a portion missing?
>
> A      Yes, sir.
>
> Q      Is there a portion missing at the beginning of that conversation?
>
> A      No, sir.
>
> Q      Is there a portion missing somewhere in the middle of the conversation?
>
> A      At the end, sir.
>
> Q      The end. So the end was cut off; is that right?
>
> A      Yes, sir.

(Tr. 2060; 2275-76). In short, despite their arguments that they are unable to pursue these defenses in the absence of the desired evidence, Defendants have already

advanced every defense theory that they claim would be served by introducing the proffered excerpts. The Court sees no reason to recall the witness to allow further cross-examination on the subject.

**Conclusion**

For the foregoing reasons, Defendants' motion for reconsideration is DENIED and the proffered excerpts will not be introduced into evidence.

SO ORDERED.

Dated: May 31, 2007                      _____/s/_____
       Brooklyn, New York                      Senior U.S.D.J.