UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                              02 CR 0778 (SJ)

    - against -

                                              **MEMORANDUM &**
                                                  **ORDER**

RICHARD JAMES and RONALD MALLAY,

                 Defendants.
------------------------------------------------------------X
A P P E A R A N C E S:

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney, EDNY
One Pierrepont Plaza, 15th Floor
Brooklyn, New York 11201
By:    Robert Capers, Esq.
         James McGovern, Esq.
         Lawrence Ferazani, Esq.
Attorneys for the United States

EPHRAIM SAVITT, ESQ.
260 Madison Avenue, Suite 2200
New York, NY 10016
Attorney for Defendant Richard James

STEVE ZISSOU & ASSOCIATES
42-40 Bell Blvd., Suite 302
Bayside, NY 11361
By:    Steve Zissou, Esq.
Attorney for Defendant Richard James

KAPLAN & KATZBERG
767 Third Ave, 26th Floor
New York, NY 10017
By:    Kenneth J. Kaplan, Esq.
Attorney for Defendant Ronald Mallay

LAW OFFICES OF RICHARD JASPER
276 Fifth Avenue, Suite 501
New York, NY 10001
By: Richard Jasper, Esq.
Attorney for Defendant Ronald Mallay

JOHNSON, Senior District Judge:

Defendants James and Mallay stand accused of participating in the "Mallay Enterprise," a criminal enterprise that existed for the purpose of, among others things, committing murder for pecuniary gain. Specifically, Defendants are accused of purchasing life insurance policies, hiring people to murder the insured person, and then recouping the life insurance proceeds for themselves and their co-conspirators. In sum, Defendants are charged with murder, murder-for-hire, solicitation of murder, conspiracy to murder, racketeering, obstruction of justice, mail fraud, and money laundering.

On June 1, 2007, the government called Lalita Persaud to the witness stand. Defendant James, through counsel, attempted to elicit testimony tending to suggest that Defendant Mallay was seeking to raise funds to bribe the medical examiner to change Hardeo Sewnanan's cause of death from disease to poisoning. The Court held a hearing pursuant to Federal Rule of Evidence 104 outside the presence of the jury to determine the admissibility of the information. Persaud testified that Betty Peter, a co-conspirator in the Mallay Enterprise, told her that Defendant Mallay and the Sewnanan family were attempting to raise money to bribe the medical examiner. The Court ruled

that this information was hearsay and that no exceptions to the hearsay rule applied; as such, the Court ruled that the information was inadmissible.

On June 4, 2007, the government called Betty Peter as a witness. In another hearing held outside the presence of the jury, Peter testified that she overheard a conversation in her kitchen in Guyana ("the kitchen conversation") between Ronald Mallay and the Sewnanan family shortly after Hardeo Sewnanan died. Peter testified that, during the kitchen conversation, Defendant Mallay and the Sewnanans discussed money and the medical examiner. She also testified that she told Lalita Persaud that the Sewnanan family and Defendant Mallay were going to bribe the medical examiner to change the cause of death from disease to poisoning. Defendant James moved to introduce the contents of the kitchen conversation as (1) co-conspirator statements, and (2) statements against penal interest. Defendant Mallay objected to the introduction of the statements, as did the government. For the following reasons, Defendant James' motion to introduce the contents of the kitchen conversation between Defendant Mallay and the Sewnanan family through Betty Peter is denied.[1]

**Co-Conspirator Statements**

Defendant James' first contention is that the contents of the conversation between Defendant Mallay and the Sewnanan family should be admitted into evidence

---

[1] Because Defendant James' motion to introduce these statements is denied, Defendant Mallay's motion to sever in the event that the statements are introduced is moot.

under Federal Rule of Evidence 801(d)(2)(E) as an admission of a co-conspirator. His reliance on that rule is misplaced. "[A] statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is one type of "[a]dmission by party-opponent" defined as nonhearsay, but only if "offered against" the party. Fed.R.Evid. 801(d)(2)(E). The statement of a conspirator, offered for its truth by a co-conspirator, does not fall within this Rule. See United States v. Milstein, 401 F.3d 53, 73 (2d Cir.2005) (citing United States v. Kapp, 781 F.2d 1008, 1014 (3d Cir.1986)). "Out-of-court statements by the party offering the statements and out-of-court statements by co-conspirators of the party offering the statements, when offered for their truth, remain hearsay and are not admissible unless they fit within an exception to the hearsay rule." Milstein, 401 F.3d at 73. As such, this Court must deny any attempt to introduce these statements through the co-conspirator exception to the hearsay rule.

**Statements Against Penal Interest**

Defendant James also contends that the kitchen conversation is admissible under Federal Rule of Evidence 804(b)(3), which provides that a hearsay statement can only be introduced as a statement against interest if (a) the declarant is unavailable, (b) the statement is so contrary to the declarant's interest that it is inherently trustworthy, and (c) if offered to exculpate a criminal defendant, there are corroborating circumstances that clearly indicate the trustworthiness of the statement. See Fed.R.Evid. 804(b)(3).

As an initial matter, although it is undisputed that Defendant Mallay, for Fifth

Amendment reasons, is unavailable[2], Patricia Sewnanan's statements clearly do not fall within Rule 804(b)(3). The parties not only agree that Patricia Sewnanan is available to testify, Defendant James, through counsel, has indicated that he intends to call her on his direct case. As such, Patricia Sewnanan's statements cannot be introduced as statements against her penal interest. Our analysis as to Defendant Mallay statements during the kitchen conversation continues.

Based on the foundation laid by Defendant James, it is not clear that Defendant Mallay's statements during the kitchen conversation are against his penal interest. Notably, Peter could not attribute any statement to any particular declarant. Further, during the hearing held outside the presence of the jury, the only testimony regarding the content of the conversation was the following:

> Q. You heard Ronald Mallay talking to the Sewnanan family members?
> A. I heard them talking to him.
> Q. What did they say to him?
> A. About yes, they're going to give money to get the certificate and everything.

(Tr. at 4194). The only time the witness indicated that the conversation involved Hardeo Sewnanan's life insurance policy was in the following section:

> Q. So, you remember there being a discussion about how the Sewnanans and Ronald Mallay could get the most money out of the Sewnanan policy, correct?

---

[2] For the purpose of this analysis, the Court assumes that Patricia Sewnanan's testimony would establish that the content of the conversation was against the declarants' penal interests.

5

> [...]
> A. Yes, sir.

(Tr. at 4199). Nothing in these exchange establishes that the kitchen conversation was about bribing the medical examiner to alter his or her findings. Defendant James will no doubt take exception to this characterization of the testimony. However, the only time Peter indicated the purpose of the payment was during the following exchange:

> Q. And did you tell Lalita that the Sewnanans and your brother Ronald were trying to raise money to pay the medical examiner?
> A. Yes, sir.
> Q. And did you tell Lalita that they were raising money to pay the medical examiner to change the results of the cause of death?
> A. Yes, sir.
> Q. And did you tell Lalita that they were raising money to change the cause of death from disease to poisoning?
> A. Yes, sir.
> Q. And, then, did you tell the same thing to Baskanand?
> A. Yes, sir.

(Tr. at 4196). Therefore, the witness never testified that the kitchen conversation was about bribing the medical examiner to change the result of the autopsy; she only testified that she told others that Defendant Mallay and the Sewnanans were going to bribe the medical examiner. Accordingly, Defendant James failed to establish that the content of the kitchen conversation was against Defendant Mallay's penal interests.

More importantly, Defendant Mallay's statements have been offered by the defense to exculpate Defendant James, and are subject to the last sentence of Rule 804(b)(3), which requires that "corroborating circumstances *clearly* indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3) (emphasis added). The

6

purpose of this corroboration requirement is to "circumvent[ ] fabrication" by the declarant. See Fed.R.Evid. 804(b)(3) Advisory Committee Notes. To effectuate this purpose, courts require corroboration of "both the *declarant's* trustworthiness as well as the *statement's* trustworthiness." United States v. Bahadar, 954 F.2d 821, 829 (2d Cir.1992) (emphasis in original). The burden is on the accused to justify admission of the statement by demonstrating that the statements are sufficiently corroborated. See United States v. Salvador, 820 F.2d 558, 561 (2d Cir.1987), cert. denied, 484 U.S. 966 (1987).

Defendant James has failed to demonstrate that the statements he seeks to introduce are sufficiently corroborated. Specifically, Defendant James has failed to proffer "corroboration of the declarant's statement, focusing on whether the evidence in the record supports or contradicts the statement." Salvador, 820 F.2d at 561.

Defendant James wishes to introduce these statements not simply to show that there was a conversation, but also to establish as truth that the money Defendant Mallay sought was not for a hitman, as Defendant James has indicated he anticipates the government to argue, but rather to bribe the medical examiner to change his findings. But this conclusion is not supported by the record. Specifically, Dr. Brijmohan, the pathologist that conducted the autopsy of Hardeo Sewnanan and determined that poisoning was the cause of death, was called as a witness and was never asked about accepting payments to change his findings. In fact, the cross-examination of Dr. Brijmohan focused almost exclusively on his methods, practices,

7

working environment and conclusions. Nor has Defendant James pointed to any evidence that even suggests that Dr. Brijmohan accepted payment to change his findings. Having failed to establish corroborating circumstances that would lend an indicia of reliability to these statements, this Court must deny Defendant James' motion to introduce these statements as statements against penal interest.

**Conclusion**

Accordingly, Defendants' motion to introduce the contents of the kitchen conversation between Defendant Mallay and the Sewnanan family through Betty Peter is denied.

SO ORDERED.

Dated: June 21, 2007　　　　　　　　　＿＿＿＿＿/s/＿＿＿＿＿＿＿
　　　Brooklyn, New York　　　　　　　　　Senior U.S.D.J.